May it please the court, I'm Stephanie Adraktis and I represent the petitioner Marco Lopez. Fifteen-year-old Lopez killed Gordon Fowler during an incident where Fowler tried to rape Lopez. The prosecutor argued at trial that Lopez was strictly liable for the crime, that he was guilty of felony murder because Lopez had gone to Fowler's house in order to take his wallet. Under the California felony murder rule, a defendant is strictly liable for a death that occurs during the commission of a burglary or a robbery. However, for felony murder liability to attach, the killing must occur in the perpetration of the underlying felony. And in People v. Sicarius, the California Supreme Court pointed out that if there was a significant interruption in the underlying felony, that that could sever the relationship between the killing and the underlying felony. But wasn't the jury told all that, quite specifically? They were told – first of all, they were told that if he had – he had to have the intent at the time of the killing, and then later when they asked the question, they were told that if he didn't have – if he had lost the intent, he could regain it, but it seemed like the instructions were very careful, and it's a troubling case, but it seems that the instructions were everything they had to be. Your Honor, I have two responses to that. The first is that the jury was instructed that the killing had to occur during the underlying felony, which is the only concept expressed in the instructions that represented this continuous transaction. And if one looks at Calcrim 549, which is at page 23 of the brief, one can see that the continuous transaction rule embodies more than just a temporal relationship. The word during to the layperson would encompass only that it occurred at the same time and place, but the Sicarius and Cabot opinions both make clear that a mere coincidence of time and place is not enough.  time of the killing. And the jury was told he had to have the intent to commit the theft at the time he killed him. The word during, Your Honor, I was – No. I thought specifically there was a separate instruction about the relationship between the self-defense and the intent, which said that if he had to have that intent at that time. The instructions, Your Honor, they were a bit confusing because several of them were specially drafted by the judge. And the instruction I believe the Court's referring to is the one that talks about the fact that he had to exclusively harbor the intent to defend himself at the time of the killing in order for the self-defense doctrine to apply. I think that's the one the Court's referring to. The problem with that instruction, and it's at Excerpts of Record 284, is that it does not express that concept in terms of the prosecutor's burden of proving the offense against Lopez beyond a reasonable doubt. The instruction says if you find that the defendant stabbed Gordon Fowler without the intent to commit a robbery and that he stabbed only in response to an imminent rape, having an actual belief that the rape was imminent, et cetera, and it was reasonable, then he's entitled to an acquittal. That's a self-defense concept that is separate and apart from the prosecutor's duty to prove the element of a continuous transaction initially. Lopez's self-defense rights don't come into play unless the prosecutor proves initially that he was strictly liable for this murder to begin with. And so the problem with that instruction in terms of it curing an error in failing to advise the jury of the continuous transaction rule is that it's a separate concept completely from the prosecutor's burden to prove the elements. The continuous transaction rule is more than just a time and place relationship between the underlying felony and the killing, and one can see that in CALCRIM 549 because it talks about there being a, that the killing was committed in order to aid in commission of the felony. That's a logical nexus concept. That's more about whether what the defendant's intention was at the time that he killed. Was it to get the wallet? That's what this would have amounted to in this case. Is it a defense? All right. But there is a supplemental instruction that talks about reacquiring an intent. There was, Your Honor. So why didn't that cure the problem you're speaking of? It didn't. Oh, I'm sorry, Your Honor. Go ahead. It didn't cure the problem because it expressed that solely as a factual matter that the jury was to decide whether Lopez had the intent, lost it, reacquired it. That's up to them. Clearly it was because it was a factual issue, but the instruction failed to advise the jury what the legal significance was of a break in the intention. That's exactly what the Sicarius opinion refers to, and the judge failed to tell the jury if there was a significant break in Mr. Lopez's intentions, if at the time he killed Fowler he had abandoned his intent to take the wallet and was killing in response to Fowler's acts, that's a significant interruption and could terminate his strict liability for killing Fowler in the course of an underlying felony. The judge did not advise the jury in that instruction of the legal significance of the break in intention. The judge just told the jury it's up to you to decide if he had a break in his intention, and that didn't answer the jury's question. That gets me to prejudice on this issue because it was clear. Before you get there, though, in looking at the California cases, I'm not entirely confident that the continuous offense, the continuous transaction rule is actually an element of the offense. The case law cabinet in Sicarius, I believe, are the two important cases on this, are somewhat difficult to parse on that question. In Sicarius, for example, the court says it's of constitutional magnitude that the judge instructed the jury that it was to find that there was a continuous transaction if the burglary had occurred prior to the killing, and the court made clear that if the facts had been different as to the underlying crime, that it would have been a reversible error. Essentially, the concept seems to have been used to expand the concept of felony murder, not to contract it. And it seems to be to, and I keep repeating, that they're eliminating, essentially eliminating or largely eliminating any nexus or causation requirement and loosening it up. So why that would help, it's hard for me to understand. I think the language that's the most enlightening in those two cases with respect to the facts in this case is the language in Sicarius that talks about if there's a significant interruption. For example, if somebody commits a burglary by entering with intent to commit a crime, but then something happens that basically terminates that intention, a significant interruption, then the person, a killing that occurred on the premises is not necessarily a strict liability felony murder. The two fact patterns in Sicarius and Cabot don't help us much, because they both concern whether or not temporarily the burglar's liability for the killing occurred after they had arguably fled and gone to another place. And here we have a fact pattern where defendant is on the premises and there's no issue about that, but the interruption is something that is beyond his control and caused by the victim. So I would point the Court to the language in Sicarius that does state very clearly a significant interruption is the issue in a continuous transaction as well. We just didn't have those facts in those cases. The California Supreme Court has not yet said that a continuous transaction is an element of felony murder? Your Honor, I think in Sicarius they did and they didn't, because they said that in that case, if the Court had taken the issue of continuous transaction from the jury, which it did, that it was of constitutional magnitude because it relieved the prosecutor of his burden of proving the elements of the offense. But I will say that in Cabot, they do talk about the fact that in perpetration of is an element of the offense and the continuous transaction is the way that the jury instruction has been drafted to guide the jury on that. And if we look at Calcrim 549, we can see that that does encompass the logical, causal, factual relationship between the underlying offense and the killing. But Calcrim, what's the citation? 549, Your Honor. That's not the law of California. That's just the Judicial Council's suggestion that the jury should be so instructed, but the California Supreme Court is not, or Court of Appeal, in fact, has not ruled that that is an element of the crime. They do cite, Your Honor, two cases that talk about the continuous transaction rule encompassing that concept. And one thing I'll point to in Lopez's instructions was that if the jury had been instructed that this killing had to occur in perpetration of the underlying felony, we might have a different case because that is what the continuous transaction rule is supposed to guide the jury in finding, which is part of the statute and clearly an element. And here we have only the temporal relationship, the during, which wasn't enough for this jury to really understand that if there was a significant interruption in that intention, that it was not just a factual question, but it had legal significance in that it terminated Lopez's strict liability. One could find him guilty of second degree murder under that scenario, perhaps manslaughter, but the problem in this case was that the strict liability rule once invoked prevented the jury completely from even considering whether this was a heat of passion, whether it was a manslaughter, or a second degree murder. Thank you, counsel. Thank you. May it please the Court. Peggy Ruffray from the Attorney General's Office for Respondent. Your Honor, the State court in this case found that the continuous transaction theory is not an element of the offense of felony murder under California law, and that's a determination of State law that's binding on this Court. Was that opinion published? No, but it doesn't matter. The U.S. Supreme Court has said that if the State court makes a State factual – State legal factual determination in that case, whether it's published or not, that's a determination of State law. And what case are you relying on? Hicks v. Fiat, the U.S. Supreme Court case. It said, we are not at liberty to depart from the State appellate court's resolution of these issues of State law, and it was talking about the element of the law. The language was an element. The real question is whether the instructions as a whole told the jury. Really, what they – I mean, they obviously knew their problem because they came in and asked about it, which was if he came in there with the intent to rob him or before he got there he intended to rob him, and then he gave up on that, and then  why? And they're – but they're – so it's really they were bothered by the connection question, and the question is whether the instructions as ultimately given, whether they use that particular term or not, maybe that would have been one way to take care of it, really told them what they needed to know. I agree that that's the ultimate issue, whether the instructions sufficiently conveyed the concept of in the perpetration of, which is the actual element that was at issue. But that – was that language told to them in the perpetration of? I don't recall if that actual language was listed in the instructions for the elements of felony murder. But what the State court found, and let me emphasize that the question is whether the State court's legal determination was reasonable. In fact, whether it was so lacking in justification that it was beyond any possibility for fair-minded agreement. So what the State court found was, given the instructions as a whole, the jury understood this concept, and there were a number of instructions that conveyed the concept. One was they were instructed four different times that the killing had to occur during the commission of the robbery or burglary. They were also instructed that the prosecution had to prove beyond a reasonable doubt that the defendant had the specific intent to commit that underlying felony, and that there had to be a union of act and intent. They were also instructed that if the defendant stabbed the victim not during the course of a robbery and without the intent to steal, then at most he could be convicted of voluntary manslaughter or actually acquitted if they found he was using self-defense reasonably. And then finally, they were instructed in response to the jury's question that if he momentarily abandoned his intent and then later reacquired it, that was sufficient evidence to find felony murder. So what the State court found was, looking at all those instructions as a whole, the jury could not have found him guilty of felony murder unless it found that he entered the house with a specific intent to rob and either retained that intent until he killed the victim or regained it at the time that he did so. That was what the State appellate court found. And it's our position that that's completely reasonable to look at. Kagan. I mean, his story, as I understand it, is that he regained it afterwards. Well, that was his story. The jury didn't have to believe that. Wait a minute. I have two questions about that. One is, would that be a felony murder? If the defendant – if the jury found that he only regained the intent afterwards, I believe it would be because the felony murder encompasses this continuous transaction theory, encompasses until the victim has reached a place of safety. So I believe that that would include it. And I know that it doesn't matter if the order of the burglary – there are some cases that talk about that, the order of the killing and the burglary. I'm not 100 percent sure, but I believe that would be the case. And if – supposing it wasn't a felony murder, was the instructions clear enough to say that he had to have the intent to rob him when he – before he killed him? Well, the prosecutor clearly elected to proceed only on a felony murder theory, a first-degree murder. I understand that. I'm asking whether the instructions taken altogether told the jury that he had to have the intent to rob him at the time he killed him. Yes, absolutely. And that's what the California court of appeal found, that given all these instructions that I just outlined taken altogether, it could only have found him guilty if it found that he either had the intent at the time he killed him, or if he had momentarily abandoned it, that he had regained it at that time. That's what the court of appeal found. And I think in particular, the two instructions at ER 284 and 374, the answer to the jury's question and the special instruction that was given that related to self-defense in this case, those two, in addition to the instructions, they were repeatedly instructed that it had to occur during the commission of the felony. So when you take those all together, was it unreasonable for the State court to say this sufficiently conveyed this concept, that it had to be in the perpetration of the killing? And it's our contention that that was – that was definitely reasonable well within the cases that the Supreme Court has said were sufficient to convey that task to the jury. The appellant has argued before – argued before the district court and this court that his Federal constitutional rights were violated. Before the California court of appeal, he made that same argument. I read the brief that was filed by the State, which didn't address that, nor, as I read the court of appeal decision, it did not address the Federal constitutional question. Am I correct? I would disagree with that, Your Honor. I believe they did when they found that the issue – first, they determined that the continuous transaction theory was not an element of the offense, and that was presented as a requirement. Under California law, but my question is, was that the Federal constitutional question presented? Well, then they proceeded to say, under what is the required element of the offense, did these instructions sufficiently convey that requirement? And that is, in essence, the Estelle v. McGuire test. Was there a reasonable likelihood that the jury misunderstood its task? They didn't cite Estelle v. McGuire, but they were clearly addressing that exact legal issue. Well, my question is, did your office say there was no Federal constitutional violation? In the State court? Yes. I'm not sure. Did the court of appeal say there was no Federal constitutional violation? I believe that they implicitly did. I think that's the only way you can read their opinion. But not directly? They didn't use the word Federal constitutional violation, but the question that they were answering was, was the jury correctly instructed, did these instructions sufficiently convey this concept on an element of the offense? And they said, viewing the instructions as a whole, we believe that they were sufficiently instructed, and that is identical to the Estelle v. McGuire test without the citation. So I think that they were clearly addressing that issue. Assuming, hypothetically, that the continuous transaction rule actually is an element of the offense, were these instructions adequate? Yes. And that's really what the court of appeal was saying. They were saying that it's not an element, but it is one way of illustrating it, is how they described it. So it's not like the continuous transaction theory is wrong or incorrect. It's just one way of conveying this in the perpetration of element. There are other ways of doing it, too. And the instructions that were given in this case were sufficient to convey that concept. However, it is whatever exact words may be used, and there's no one way to do it. And it appears that the words in the perpetration of were not used, it was during. Does that make a difference? I don't think so, because the they were instructed with all of this other language. And I don't think they have to actually quote the statute, PC 189, in order to let the jury know what the elements of the offense are. Why not? If the other instructions sufficiently convey it. I mean, there are cases where there is an actual element of the offense, and the that language isn't included at all. But, for example, if it's included in the information that's read to the jury, and if it's in the jury form that they have to fill out, that's sufficient to be read together to convey the concept of an element of the offense. That's in Henderson v. Skinner. But the farther you stray away from the statutory text, the greater risk one has of miscommunicating the statutory text to the jury. Do you agree with that? Well, they did give the standard instructions in this case for felony murder. If they don't include that exact language in the perpetration of the statute. Yes, standard at the time. And now the continuing transaction rule is in the suggestion instructions, yes? It's an instruction that can be given. It's not required. It's no case that says it has to be given sua sponte. And, in fact, the cases that discuss that now that it has been included say that it's simply a clarification of the element that can be given if necessary. Thank you, counsel. Thank you. We'll give you two minutes for rebuttal. Thank you, Your Honor. The Court asked whether the term in perpetration is included in the instructions. The instruction on felony murder is at excerpts of Record 279, and it states that it occurs during the commission on the underlying felony. So the term in perpetration did not appear in that instruction. And what do you think the difference is? In perpetration encompasses more than just a coincidence of time and place, which is how this is explained in Cabot. But continuing transaction doesn't. The 549 instruction, the CALCRIM, I understand the Court's question. Continuous in transaction sounds like something that's temporal, but the elements of what a continuous transaction is or what the jury can consider in making that decision. So if the killing was committed to aid in commission of the underlying felony and that does seem more like a logical nexus or a causal connection between the killing and the underlying felony, that's where the continuous transaction concept. But that's not an instructional problem, then. I mean, in other words, the continuous transaction doesn't, if anything, would loosen things up. It doesn't seem, and if there's a problem, it's a sufficiency of the evidence sort of a problem. In other words, whatever the actual standard is, is the standard, and you're entitled to review under that standard. But the you're complaining about the instruction, and the continuous transaction instruction seems to have less nexus than what it was actually given. Well, continuity, I would submit, Your Honor, was a key issue at this trial, and that the word continuous would have enlightened the jury about the fact that if there was a significant break that was caused by felonies. Well, with the continuous transaction, he went to, I mean, one could certainly say he went in there intending to rob the guy, and then something else happened, and then as a result, and it was all one continuous transaction. I mean, to me, it's just incredibly vague and useless, frankly. Well, defense counsel could have argued with the continuous transaction instruction that it was Lopez's felonious intent that it had to be continuous. And they did argue, right? They did argue that. He did, but he didn't have the instruction behind him to drive the jury toward an acquittal on that ground. And I would also like to point out that counsel has argued that the instruction at page 284 would have embodied that concept and that that was sufficient. But if one looks at that instruction closely, it refers to second-degree murder, the very, the first paragraph that talks about the ability to reduce the crime or to acquit Lopez on it because if there was an unwanted touching or threat, it says to second-degree murder. The felony murder in this case was a first-degree murder, and the prosecutor argued, and the instructions state that that is not reducible on that ground. So that instruction, the first paragraph at 284, only applied to second-degree murder, not to the first-degree felony murder that was charged here. It was the significant interruption concept that the continuous transaction instruction would have given to the jury the opportunity to get an answer to the question they asked to the court about whether or not, if there was a break in the intention, which clearly they were referring to the moment when Fowler made his attack on Lopez, was that interruption enough to sever the relationship between the killing and the intent to steal the wallet, which was conceded at trial. Thank you, counsel. Thank you. The case just argued to be submitted for decision. Thank you both for your arguments.
judges: Alarcon, Thomas, Berzon